**Slip Op. 05-62**

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| CHRISTINA DUNN-HEISER, | : |
| *Plaintiff,* | : |
| v. | Court No. 03-00725 |
| UNITED STATES, | : |
| *Defendant.* | : |

[Plaintiff's Motion for Judgment on the Pleadings denied; Defendant's Motion for Judgment on the Administrative Record granted.]

Decided:  May 31, 2005

Christina E. Dunn-Heiser, Plaintiff *Pro Se.*

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Harry A. Valetk); Louritha Green and Allan L. Martin, Office of Associate Chief Counsel, Bureau of Customs and Border Protection, U.S. Department of Homeland Security, Of Counsel; for Defendant.

## OPINION

RIDGWAY, Judge:

In this action, *pro se* plaintiff Christina E. Dunn-Heiser ("Applicant") challenges the decision of the Deputy Assistant Secretary of the U.S. Department of the Treasury upholding the determination of the U.S. Customs Service ("Customs")[1] denying her application for a customs

---

[1]Effective March 1, 2003, Customs was renamed the Bureau of Customs and Border Protection of the U.S. Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296 § 1502, 2002 U.S.C.C.A.N. (116 Stat. 2135, 2308); Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. No. 108-32, at 4 (2003). The

broker's license, based on her failure to pass the requisite examination. Specifically, Applicant

contends that she should be awarded credit for her answer to one exam question which Customs

scored as incorrect. Credit for that question would give her a passing score on the exam.

Both parties have now filed dispositive motions. *See* Plaintiff's untitled submission

("Applicant's Motion for Judgment on the Pleadings" or "Pl.'s Brief");[2] Defendant's Memorandum

in Support of Its Motion for Judgment on the Administrative Record and In Opposition to Plaintiff's

Motion for Judgment on the Pleadings ("Def.'s Brief").[3]

Jurisdiction lies under 28 U.S.C. § 1581(g)(1) (2000).[4] For the reasons discussed more fully

below, the Treasury Department's determination denying Applicant's appeal of the scoring of her

customs broker license exam must be sustained. Applicant's Motion for Judgment on the Pleadings

---

agency is referred to as Customs herein.

[2]Applicant was encouraged to retain counsel to represent her in this action, or to seek appointment of counsel by the court. *See*, *e.g.*, Letter to Applicant from Chief Deputy Clerk of Court (Oct. 22, 2003); Letter to Applicant from Court (Jan. 22, 2004). She declined offers of assistance, however, and advised that she preferred to personally represent her own interests.

[3]The parties' submissions are quite concise. The text of Applicant's brief is a slim five pages, although the pages actually are not numbered. (References herein assume that the pages of her brief are numbered beginning with the first page of the text of her argument.) The Government's brief in support of its cross-motion is similarly succinct – a mere eight pages. The parties elected not to file reply briefs. *See* Letter to Parties from Court (Dec. 20, 2004).

[4]All statutory citations are to the 2000 version of the United States Code.

Although Applicant frames her prayer for relief in this action as a request for credit for her answer to a question on the customs broker license examination, it is treated – for purposes of jurisdiction – as a challenge to the denial of a license, because "the denial of a license is a foregone conclusion for an unsuccessful examinee." *See* Kenny v. Snow, 401 F.3d 1359, 1361 n.3 (Fed. Cir. 2005).

is therefore denied, and the Government's Motion for Judgment on the Administrative Record is granted.

## I. **Background**

Customs brokers help importers and exporters navigate the labyrinthine federal laws governing the movement of merchandise into and out of the customs territory of the United States. As Customs explains:

> The Customs broker is a highly knowledgeable professional. Customs brokers must possess thorough knowledge of tariff schedules and Customs Regulations and must also keep abreast of the amendments made through constant changes in law and administrative regulations. The Customs broker must be well versed in determining proper classifications and dutiable value [of imported merchandise] and be fully aware of the vast number of commodities subject to quota and other admissibility requirements. The Customs broker's base of knowledge must also encompass the requirements of more than 40 governmental agencies, such as the U.S. Department of Agriculture on meat import questions, the Environmental Protection Agency (EPA) on vehicle emission standards or the Food and Drug Administration on product safety.

U.S. Customs Service, Broker Management Handbook 11 (Jan. 2002).

Because customs brokers play such an integral role in international trade, and because the relevant statutes and regulations are so numerous and so complex, applicants for a broker's license must successfully complete a comprehensive written licensing exam. The exam is designed "to determine the applicant's knowledge of customs and related laws, regulations and procedures . . . and all other appropriate matters."[5] 19 U.S.C. § 1641(b)(2); 19 C.F.R. § 111.13(a) (2002).[6]

---

[5]Much of the information in this overview of the customs broker license exam is drawn from Customs' website, and from publications available on that website. *See*, *e.g.*, Broker Management Handbook, Chapter 3, "Broker Examination Process"; "Becoming a Customs Broker" (pamphlet).

The exam is administered twice a year (in the spring and the fall), and consists of 80 multiple choice questions covering a range of topics pertinent to a broker's duties (including entry, classification, country of origin, trade agreements, value, broker responsibilities, and marking). *See* 19 C.F.R. § 111.13(b) (specifying frequency of examination).

The exam is open-book. Those sitting for the test are advised to bring – and are expected to know – Customs' regulations (codified in Title 19 of the Code of Federal Regulations), the Harmonized Tariff Schedule of the United States ("HTSUS"), and other specified reference materials, which they may refer to during the course of the exam. Test-takers must correctly answer at least 60 questions to pass. Despite the open-book format of the exam, the success rate is relatively low.[7] However, test-takers who fail may retake the exam without penalty. 19 C.F.R. § 111.13(e).

---

Included on Customs' website are the questions and answers from all customs broker license exams from April 1997 through the present. As indicated there, all exams since the April 1998 administration have consisted of 80 questions.

[6]All references to regulations are to the 2002 version of the Code of Federal Regulations.

[7]Customs' website apparently provides no data on exam pass rates. However, an unofficial, quick-and-dirty survey of relevant data reported on the websites of various test preparation services suggests that pass rates vary significantly from one exam to another, and that the rate is never very high.

For example, one such website reports that – for the five-year period from April 1999 to April 2003 – the average national pass rate was 21%, with a low of 3% for the April 2002 exam and a high of 50% for the October 2001 exam. For the October 2002 exam – the exam at issue here – the national pass rate was reportedly a mere 15%. *See also* Rudloff v. United States, 19 CIT 1072, 1073 n.3 (1995) (noting 2% pass rate for 1988 exam, and 40% pass rate for October 1994 exam).

Applicant in this case failed the October 2002 exam, initially receiving credit for only 58 questions. She petitioned Customs, requesting reconsideration of her answers to three questions.[8] Customs awarded credit for one of those three answers, but denied credit for the other two. A.R. Doc. No. 3.[9]

With credit for her answers to only 59 questions, Applicant was still one answer shy of a passing score on the exam. She therefore petitioned the Treasury Department, seeking review of the two remaining questions in dispute. A.R. Doc. No. 2. Like Customs, the Treasury Department denied Applicant's request for credit for both questions. A.R. Doc. No. 1.

This action ensued, in which Applicant seeks credit for her answer to a single exam question.[10] *See* Applicant's Letter to U.S. Court of International Trade (Oct. 7, 2003) ("Complaint") (discussing only one question); Pl.'s Brief at 2 (referring to "[t]he exam *question* that is being

---

[8] According to the Government, Applicant sought Customs' reconsideration of her answers to three questions, by petition dated December 20, 2002. *See* Def.'s Brief at 2. However, the Administrative Record filed by the Government does not include a copy of that petition. Nor has a copy been otherwise filed with the court.

[9] The pages of the Administrative Record in this action are not sequentially numbered. As submitted by the Government, the record is indexed as five numbered documents. Some of those five documents – specifically, Document Nos. 3, 4, and 5 – have additional documents attached to them, which are listed separately in the index under the corresponding indexed document (that is, under Document No. 3, 4, or 5).

The five documents numbered in the index to the Administrative Record are cited as "A.R. Doc. No. ____." Documents not specifically numbered in the index (that is, documents other than Document Nos. 1 through 5) are cited as Attachments to the respective corresponding numbered document – in other words, as "A.R. Doc. No. ____, Att. ____."

[10] The record does not disclose whether Applicant has sat for the exam since the October 2002 test at issue in this case. However, the exam has been administered five times since then.

appealed") (emphasis added), 5 (concluding that she "should be granted credit for the Custom Broker exam *question*") (emphasis added). *See also* Def.'s Brief at 3 (noting that Applicant is now "focused solely" on her answer to one exam question).

## II. Standard of Review

The Secretary of the Treasury is vested with broad powers over the licensing of customs brokers. *See*, *e.g.*, Kenny, 401 F.3d at 1361; Bell v. United States, 17 CIT 1220, 1225, 839 F. Supp. 874, 878 (1993) (citations omitted). Consistent with those broad powers, a determination denying a license can be overturned only if that determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706; Kenny, 401 F.3d at 1361.

As discussed in section I above, one of the grounds for denying a license is failure to pass the requisite examination. The Court of Appeals recently highlighted the narrow scope of judicial review of the scoring of such exams:

> Underpinning a decision to deny a license arising from an applicant's failure to pass the licensing examination are factual determinations grounded in examination administration issues – such as . . . the allowance of credit for answers other than the official answer – which are subject to limited judicial review.

Kenny, 401 F.3d at 1361 (*citing* 19 U.S.C. § 1641(e)(3)). Thus, in cases like this one, the findings of the Secretary of the Treasury as to the facts – if supported by substantial evidence – are, by statute, conclusive. 19 U.S.C. § 1641(e)(3); Kenny, 401 F.3d at 1361. *See also* O'Quinn v. United States, 24 CIT 324, 325, 100 F. Supp. 2d 1136, 1137-38 (2000) (discussing application of "substantial evidence" test and "arbitrary and capricious" standard, in context of judicial review of scoring of customs broker license exam).

In sum, regulatory authorities are entitled to certain latitude in the design and scoring of customs broker license exams. Di Iorio v. United States, 14 CIT 746, 752 (1990). Officials' determinations as to "the appropriateness of various [exam] questions and the answers selected" are accorded a measure of deference. *Id*. at 747. "Judicial intrusion into . . . the formulation and grading of standardized examination questions" is properly "limited in scope." *Id*. The court thus does not serve as "some kind of final reviewer of the Customs broker licensing examination[]," substituting its judgement for that of the responsible Customs and Treasury Department officials. 14 CIT at 747, 752.[11]

## III. Analysis

The express objective of the customs broker license exam is to gauge an applicant's command of Customs' positions on the relevant rules and regulations. 19 U.S.C. § 1641(b)(2); 19 C.F.R. § 111.13(a). *See also* Def.'s Brief at 6. As section I above notes, one subject tested on the exam is the law governing the marking of imported merchandise to indicate its country of origin. The exam question at issue in this action deals with those marking requirements.

### A. Country of Origin Marking Requirements

The marking statute requires that, with certain exceptions not relevant here, "every article *of foreign origin* . . . imported into the United States shall be marked . . . to indicate to an ultimate purchaser in the United States . . . the *country of origin* of the article." 19 U.S.C. §1304(a)

---

[11]Indeed, courts have even declined to overturn questions that they found to be flawed. *See*, *e.g.*, Di Iorio, 14 CIT at 748-49 ("While not perfect, the question was adequate so that, as to this question, plaintiff's appeal was rejected reasonably.").

(emphases added); *see also* 19 C.F.R. § 134 ("Country of Origin Marking"). Customs' marking

regulations expressly define "country of origin" as the "country of manufacture, production, or

growth of any article *of foreign origin* entering the United States." 19 C.F.R. § 134.1(b) (emphasis

added). "Foreign origin" is, in turn, defined as "a country of origin *other than the United States*."

19 C.F.R. § 134.1(c) (emphasis added). Thus, by definition, Customs' marking requirements apply

only to merchandise of foreign origin – that is, merchandise of an origin other than the United States.

The purpose of requiring that imported merchandise be properly marked with its country of

origin is to help consumers make informed decisions:

> Congress intended that the ultimate purchaser should be able to know by an
> inspection of the marking on imported goods the country of which the goods is the
> product. *The evident purpose is to mark the goods so that at the time of purchase the
> ultimate purchaser may, by knowing where the goods were produced, be able to buy
> or refuse to buy them, if such marking should influence his will.*

United States v. Friedlaender & Co., 27 C.C.P.A. 297, 302 (1940) (emphasis added).

To that end, Customs' marking regulations require that – in any case where the words

"United States," "American," or the name of any U.S. city or locality appear on an imported article,

and that designation "may mislead or deceive the ultimate purchaser" – the name of the article's

actual country of origin must appear "legibly and permanently," "in at least a comparable size," and

"in close proximity to" the potentially misleading or deceptive reference to the United States, and

must be preceded by a phrase such as "Made in" or "Product of." 19 C.F.R. § 134.46.

Moreover, when the potentially misleading or deceptive reference to the U.S. appears on a

hangtag, Customs' longstanding "same side" rule applies. Under that rule, the hangtag must be

marked with the actual country of origin "*on the same side* [*of the hangtag*] . . . *as the U.S. reference*

so that the information is viewable in one inspection of the item . . . even if the article is otherwise properly marked with country of origin."  HQ 734874 (May 10, 1993) (emphasis added) (*cited in* Pl.'s Brief at 1).  *See also* Def.'s Brief at 7.

## B.  The Exam Question and The Correct Answer

The exam question here at issue tested license applicants' knowledge of Customs' marking regulations – particularly the "same side" rule for hangtags.  The question reads:

> A man's woven shirt is properly marked with the country of origin on the front of a sewn in label located at the center of the neck.  There is a black hangtag located on the right sleeve near the wrist area.  One side of the hangtag lists, in red print, the name of the importer and their U.S. address: TSA, 111 NW 1st, Seattle, WA.  The other side of the hangtag lists the size, material content and price.  To comply with Customs country of origin marking requirements, which **ONE** of the following statements is correct?
>
> (A)   No additional marking is required since the sewn in label correctly states the country of origin.
>
> (B)   An additional hangtag on the left sleeve is required which states the country of origin.
>
> (C)   An additional country of origin marking is required. It must be located on the side of the hangtag near the price.
>
> (D)   An additional country of origin marking is required.  It must be located on the side of the hangtag, which lists the U.S. address.  It must be legible, permanent, and in close proximity to the U.S. address.  It also must be of a comparable size.
>
> (E)   An additional hangtag in the center of the neck re-stating the country of origin would be sufficient.

A.R. Doc. No. 3, Att. 2. The question requires test-takers to synthesize the fact pattern provided, then choose which of the five potential answers best describes Customs' marking requirements. Customs' answer key for the exam lists (D) as the correct answer. Applicant, however, chose (A). *See* A.R. Doc. No. 3, Atts. 1, 3; Complaint, Att. 2 (Applicant's computer-scannable answer sheet for the exam).

To correctly answer this question, a test-taker needs to know a limited set of information, all of which either is provided in the question itself or is available in the reference materials – in this instance, Customs' regulations (codified in Title 19 of the Code of Federal Regulations) – which test-takers are encouraged to bring to (and may refer to during) the exam. Information which is not expressly stated in a question but which is provided in the reference materials is effectively incorporated into the question. *See*, *e.g.*, <u>Kenny</u>, 401 F.3d at 1361-62 (finding no ambiguity in an exam question which referred to "alcoholic strength by volume of 0.4%" but which did not specify the temperature at which strength was measured, where a note to the HTSUS provides that "alcoholic strength by volume" is determined at 20° Celsius).

Here, the exam question states that the article's "country of origin" is "properly marked." Although the country of origin is not specifically identified in the text of the question, a test-taker should know that it is *not* the United States, because Customs' marking regulations quite literally *by definition* exclude the United States from the universe of possible "countries of origin." As discussed in section III.A above, the marking regulations expressly define "country of origin" as the "country of manufacture, production, or growth of any article of *foreign origin* entering the United States." 19 C.F.R. §134.1(b) (emphasis added). And "foreign origin," in turn, is defined as "a

country of origin *other than the United States*."  19 C.F.R. §134.1(c) (emphasis added).  In light of those definitions, the concept of a "properly marked country of origin" cannot logically apply to U.S. goods (at least in the context of the marking regulations, which are the subject of the exam question at issue here).

The ineluctable conclusion – that the "properly marked country of origin" is a country *other than the U.S.* – is confirmed by the remaining text of the question, which states that a U.S. location, described as the *importer's* U.S. address, appears on a hangtag attached to the article.  Because the article is of foreign origin, and because the hangtag refers to a U.S. location ("Seattle, WA"), the additional marking requirements of 19 C.F.R. § 134.46 are implicated.  And the "same side" rule requires that any additional country of origin marking must appear on the same side of the hangtag as the U.S. reference.

In short, based on the information provided in the question, the correct answer must address both the additional marking requirements of 19 C.F.R. § 134.46 and the "same side" rule applicable to hangtags.  That answer is clearly (D):

> (D)    An additional country of origin marking is required.  It must be located on the side of the hangtag, which lists the U.S. address.  It must be legible, permanent, and in close proximity to the U.S. address.  It also must be of a comparable size.

None of the other four potential answers addresses both the elements of 19 C.F.R. § 134.46 and the "same-side" rule.  (D) is thus the only one of the five answers that properly reflects Customs' official position on country of origin marking requirements.

Indeed, Applicant herself candidly concedes that (D) is the correct response, "provid[ed] [that] the country of origin . . . is not the US."  Pl.'s Brief at 3-4.[12]  That statement is a tacit admission that (D) is the correct answer to the question as it appeared on the exam.  In other words, even Applicant agrees that – absent any assumptions – the correct answer to the question is (D).

### C.  Applicant's Assumptions

Only by making some fairly elaborate assumptions and effectively re-writing the exam can Applicant begin to rationalize her answer.  However, customs law does not afford test-takers such creative license.  "Examinees cannot be permitted to reach conclusions by taking a portion of the question and formulating their own factual scenarios."  Di Iorio, 14 CIT at 751.  Nor is an examinee permitted to "unilaterally rewrite the question."  *Id*.

Applicant claims that the question at issue here suffers from a "lack of critical decision-making information" which, she asserts, necessitated that she make assumptions.  Pl.'s Brief at 3-4.  Her principal contention is that the question fails to make it clear that the United States was *not* the

---

[12]Applicant quibbles, in passing, with whether the information on the hangtag "is misleading or deceptive to the ultimate purchaser," so as to implicate the additional marking requirements of 19 C.F.R. § 134.46.  *See* Pl.'s Brief at 4.  Asserting that "[d]etermining whether or not the hangtag is misleading or deceptive is rather opinionated," Applicant opines that she personally "does not feel that there is sufficient evidence that the ultimate purchaser will become confused as to the country of origin of the shirt."  *Id*.

The law is clear, however.  Applicant's personal views on such matters are irrelevant.  *See generally* Def.'s Brief at 7.  Compliance with 19 C.F.R. § 134.46 is judged on an objective – not a subjective – basis.  *See*, *e.g.*, Carrier v. United States, 20 CIT 227, 232-33 (1996) (whether additional country of origin marking is of size "at least . . . comparable" to potentially misleading or deceptive reference to U.S. is to be judged on objective, not subjective, basis).

"properly marked country of origin." She emphasizes that "the country of origin is not listed [in the question] and *is not mentioned as a foreign origin*." Pl.'s Brief at 3 (emphasis added).

To the contrary, Applicant had only to open her copy of Title 19 of the Code of Federal Regulations and turn to the definition of "[c]ountry of origin" in the marking regulations. As explained in sections III.A and III.B above, "country of origin" is – in the context of customs marking requirements – a term of art which is expressly defined in the regulations by reference to "foreign origin" and which, by definition, excludes the United States from the universe of possible countries of origin for these purposes. 19 C.F.R. § 134.1(b)-(c). The premise underlying Applicant's argument is thus baseless. There is no need for the text of the question itself to expressly exclude the United States as a potential "country of origin"; the marking regulations, on their face, serve that purpose. Accordingly, contrary to her claims, the exam question at issue did not require Applicant to make any assumptions in order to reach the correct answer.

Applicant's remaining arguments proceed from the same premise, rejected above – that is, from the premise that the exam question at issue required test-takers to make assumptions.[13]

---

[13]As discussed in note 8 above, Applicant's petition to Customs is not included in the Administrative Record. It is therefore unclear what arguments she raised in that forum. What is clear, however, is that – in her appeal to the Treasury Department – Applicant's sole argument was that the hangtag was not misleading or deceptive. *See* A.R. Doc. No. 2; *see also* n.12, *supra*.

Applicant thus did not argue to the Treasury Department – as she does here – that the article described in the question was assembled in the United States. Nor did she argue – as she does here – that the U.S. address on the hangtag could be "part of a trade name, trademark, or souvenir marking" or "the location to [which purchasers should] direct any questions regarding the item." *See* Pl.'s Brief at 4.

It is thus possible that virtually all of Applicant's arguments in this action could have been barred for failure to exhaust administrative remedies. *See*, *e.g.*, Rudloff, 19 CIT at 1074-75

Applicant asserts – in essence – that, because the text of the question itself does not expressly rule out the United States as the "country of origin," the "country of origin" must be the United States. *Compare*, *e.g.*, Pl.'s Brief at 3 ("since the country of origin is not listed [in the question] and is not mentioned as a foreign origin the probability that the country of origin could actually be the United States cannot be ruled out") *with* Pl.'s Brief at 3 (Applicant "made an assumption that the country of origin is the US"). But not only was it unnecessary for her make *any* assumptions (as discussed above), the assumptions that she did make were not even particularly well-founded.

There is an obvious leap in logic, for example, between Applicant's assertion that the U.S. *could not be excluded* as the country of origin and her conclusion that the U.S. therefore *is* the country of origin. Further, as Applicant acknowledges, her claim that the U.S. is the country of origin rests on an assumption that the article was assembled in the United States, and that the U.S. location listed on the hangtag is "preceded by the phrase '. . . Assembled in, or Made in'." *See*, *e.g.*, Pl.'s Brief at 3 ("Providing this assembly assumption is correct, the US could become the country of origin for the item . . . ."). However, nothing in the text of the question supports Applicant's "assembly assumption." Indeed, because articles that are *assembled* in this country – by definition – are not themselves *imported* into the country, her "assembly" hypothesis is fatally undermined by the question's reference to the "importer" of the merchandise.

Applicant's alternative assumptions are similarly flawed. She postulates, for example, that the U.S. address on the hangtag could be "part of a trade name, trademark, or souvenir marking."

---

(contrasting the introduction of additional evidence, which is permitted under 19 U.S.C. § 1641(e)(4), with the assertion of additional arguments, which may be barred by the doctrine of exhaustion). However, the Government raised no such objection.

Pl.'s Brief at 4 (*citing* HQ 733281 (Aug. 3, 1990)). Such cases are covered by a special rule. *See* 19 C.F.R. § 134.47.[14] But there is nothing whatsoever in the fact pattern of the question to suggest that the information on the hangtag relates to any trade name, trademark, or souvenir marking. And, more to the point, as discussed above, the question does not require an examinee to assume any additional facts.

In the alternative, Applicant hypothesizes that purchasers "may interpret the US address on the hangtag as the location to [which they should] direct any questions regarding the item." Pl.'s Brief at 4. Invoking Customs ruling HQ 732816, Applicant asserts that "addresses, taken alone, would not be misleading or confusing and may provide the consumer a place to direct any questions they might have." Pl.'s Brief at 4 (*citing* HQ 732816 (Nov. 24, 1989)).

HQ 732816 ruled that the additional marking requirements of 19 C.F.R. § 134.46 do not apply to a U.S. address provided "for purposes of offering purchasers a location to pursue guarantee or customer satisfaction assistance." Another ruling – HQ 561610 – similarly exempts from the scope of § 134.46 clear invitations to contact a company with questions or comments. In that case, the reference at issue read: "For any product related comments write to us at: [U.S. Address]." HQ

---

[14]Under the special rule that applies to "[s]ouvenirs and articles marked with trademarks or trade names":

> When as part of a trademark or trade name or as part of a souvenir marking, the name of a location in the United States or "United States" or "America" appear[s], the article shall be legibly, conspicuously, and permanently marked to indicate the name of the country of origin of the article preceded by "Made in," "Product of," or other similar words, in close proximity or in some other conspicuous location.

19 C.F.R. § 134.47.

561610 (Jan. 14, 2000).  *See also* HQ 560610 (Oct. 8, 1997) (listing country names next to phone numbers of customer service representatives on hangtag with language expressly inviting purchasers to call with "QUESTIONS or COMMENTS" does not trigger additional marking requirements of 19 C.F.R. § 134.46) (*cited in* Pl.'s Brief at 2).  In stark contrast, nothing in the text of the exam question here even hints at guarantees, warranties, product-related comments or questions, or customer service.

Like the plaintiff test-taker in Kenny, rather than analyzing the question as it appeared on the exam, Applicant here too "chose to ignore the stated facts of the question and now labors to find a justification for doing so."  Kenny, 401 F.3d at 1362 (*quoting* Kenny, 28 CIT ____, ____, 2004 WL 1249852 at * 4 (2004)).  The result in Kenny obtains here as well.

## IV.  **Conclusion**

For all the foregoing reasons, the Treasury Department's determination denying Applicant's appeal of the scoring of her customs broker license exam must be sustained.  Applicant's Motion for Judgment on the Pleadings is therefore denied, and the Government's Motion for Judgment on the Agency Record is granted.

Judgment will enter accordingly.

_____/s/_____
Delissa A. Ridgway, Judge

Decided:  May 31, 2005
          New York, New York