**Slip Op. 06-106**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

---

|                          |     |                                         |
| ------------------------ | --- | --------------------------------------- |
| OMKAR HARAK,             | :   |                                         |
| Plaintiff,               | :   | **Before: Judge Judith M. Barzilay**    |
| v.                       | :   | **Court No. 05-00365**                  |
| UNITED STATES,           | :   |                                         |
| Defendant.               | :   |                                         |

---

**OPINION**

[Plaintiff's Motion for Judgment upon the Agency Record denied; Defendant's Motion for Judgment upon the Agency Record granted.]

Dated: July 18, 2006

*Pietragallo Bosick & Gordon, LLP* (*Albert Nicholas Peterlin*) for the plaintiff.

*Peter D. Keisler*, Assistant Attorney General; (*Barbara S. Williams*), Attorney in Charge, International Trade Field Office; (*Aimee Lee*), U.S. Department of Justice, Civil Division, Commercial Litigation Branch; *Louritha Green*, Office of Associate Chief Counsel, United States Customs & Border Protection, of counsel, for the defendant.

**BARZILAY, JUDGE:** Plaintiff moves for Judgment upon the Agency Record pursuant to USCIT Rule 56.1, seeking review of the denial of his application for a customs broker's license, which was based on his failure to achieve a passing score of 75% on the requisite examination. Specifically, Plaintiff petitions this court for reversal of the Department of Homeland Security's Assistant Secretary for Policy and Planning's ("Assistant Secretary")

denial upon administrative review of credit for nine answers to exam questions initially scored as incorrect. Defendant has filed a cross-motion in opposition, seeking that the court uphold the Assistant Secretary's decision. For the reasons stated below, Plaintiff's motion is denied, and the case is dismissed.

## BACKGROUND

Plaintiff Omkar Harak ("Plaintiff" or "Harak") sat for the April 5, 2004, administration of the Customs Broker License Examination.[1] A.R.[2] Ex. A at [1]. In a letter dated May 14, 2004, U.S. Customs and Border Protection ("Customs") advised Plaintiff of his score of 65% and that 75% or higher was required to achieve a passing score.[3] A.R. Ex. A at [1]. The letter further prescribed the procedure for challenging the score, notified Plaintiff of the next scheduled examination, and provided contact information for the relevant authorities. A.R. Ex. A at [1]. Included with Customs' letter was a copy of Plaintiff's answer sheet, examination booklet, and answer key. A.R. Ex. A at [2-26]. Failure to achieve a passing score does not preclude an

---

[1] The examination is prepared, administered, and graded semiannually by U.S. Customs and Border Protection pursuant to its statutory authority under 19 U.S.C. § 1641(b)(2) (2000). The examination aims to test an individual's "knowledge of customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters necessary to render valuable service to importers and exporters." 19 C.F.R. § 111.13(a) (2003). The exam consists of 80 multiple choice questions; the minimum passing score is 75 %. A.R. Ex. A at [4]. As one of the criteria of obtaining a broker's license, the examinee must correctly answer at least 60 questions. *See* 19 C.F.R. § 111.11(4).

[2] "A.R." represents the Administrative Record in this case, which is composed of exhibits. For the sake of convenience, the record was paginated starting on the first page of Exhibit A; page numbers are bracketed in the citations to the record.

[3] The April 2004 examination was not the first time Plaintiff failed to achieve a passing score. Plaintiff explained in his letter of February 7, 2005, that he did not pass the April 2003 administration of the examination and "accepted the results" despite his discontent. Letter from Plaintiff to Secretary of the Treasury (Feb. 7, 2005).

examinee from retaking the examination at a later date.  19 C.F.R. § 111.13(e).  The record does

not reflect whether Plaintiff has retaken or plans to retake the examination.

Plaintiff sent a letter requesting an appeal of his score and challenging thirteen exam

questions.[4]  *See* A.R. Ex. B at [28].  In a letter dated August 19, 2004, Customs granted credit for

four of those questions, but denied credit for the remainder.  A.R. Ex. B at [28].  Of the

challenged questions, credit was granted for Plaintiff's answers to questions 12, 16, 25, and 80.

A.R. Ex. B. at [28].  The record does not reflect any reasoning for granting credit for these four

answers, only that credit was granted.  A.R. Ex. B at [28].  Credit was denied for his answers to

questions 8, 14, 15, 19, 36, 38, 44, 73, 74.  A.R. Ex. B at [28].  The decision to grant credit for

those four questions raised Plaintiff's score to 70%, which was still four correct answers shy of a

passing score.  In its letter, Customs included several pages explaining the single correct and

several incorrect answers for every question that Plaintiff was denied credit.  A.R. Ex. B at [30-

38].

In a letter dated September 20, 2004, Plaintiff then petitioned the Department of

Homeland Security, Border and Transportation Security Directorate ("Directorate") for further

review of the nine contested questions for which he was denied credit.  A.R. Ex. C at [40].

Plaintiff also submitted an addendum in which he dedicated one page to challenging each of the

nine questions.  A.R. Ex. C at [41-49].

Upon the determination that Customs had the authority to decide the disposition of

Plaintiff's petition, the Office of the Executive Secretariat, Transportation Security

---

[4] The Administrative Record filed by the Government does not include a copy of this
appeal.  However, the August 19, 2004, letter from Customs refers to Plaintiff's appeal in the
first paragraph.  A.R. Ex. B at [28].

Administration ("Secretariat") redirected Plaintiff's petition to Customs on October 20, 2004.[5] A.R. Ex. D at [52]. The Secretariat declared its intent to send Plaintiff a copy of this letter as notification of the transfer, though the administrative record does not reveal Plaintiff's receipt of any communication. A.R. Ex. D at [52]. Plaintiff's petition was then faxed by Customs to Plaintiff's original addressee at the Directorate. A.R. Ex. D at [54]. Customs followed up in a letter dated November 24, 2004, informing Plaintiff that his appeal petition had been "inadvertently misrouted [sic]," that it would be considered timely, and that the Department of Homeland Security would send written notification detailing the results of the appeal. A.R. Ex. F at [56].

The Assistant Secretary informed Plaintiff of its determination to affirm the denial of credit for the nine contested questions by letter dated January 31, 2005. A.R. Ex. G at [58]. The brief letter does not offer information regarding the option of further appeal. A.R. Ex. G at [58]. Finally, Plaintiff wrote to the Secretary of the Treasury requesting further administrative review.[6] Plaintiff's Letter to Secretary of the Treasury (Feb. 7, 2005); *see* A.R. at [ii]. Customs replied on April 20, 2005, advising Plaintiff that the Secretary of the Treasury no longer decides appeals of this nature and that his options for administrative review were exhausted. Customs Letter to Plaintiff (Apr. 20, 2005); *see* A.R. at [ii]. The letter further advises Plaintiff that he is entitled to pursue an appeal with this Court and of the date of the next Customs Broker License

---

[5] This transfer was ultimately incorrect. The erroneous "misdirect[ion]" was remedied, and Plaintiff was notified by letter dated November 24, 2004. *See* Def.'s Br. 3.

[6] The Administrative Record does not include any documents after the Assistant Secretary's letter of January 31, 2005. The reason given is that the subsequent four letters were not considered by the Department of Homeland Security in rendering its final administrative review . . . , in this case." A.R. at [ii].

Examination. A.R. at [ii]; *see* 19 U.S.C. § 1641(e)(1); 19 C.F.R. § 111.17(c).

This action arises out of Plaintiff's petition to this Court by letter dated May 10, 2005

pursuant to 19 U.S.C. § 1641(e)(1).

### JURISDICTION AND STANDARD OF REVIEW

The court has exclusive jurisdiction over this case pursuant to 28 U.S.C. § 1581(g)(1)

(2000).  The Secretary of the Treasury ("Treasury")[7] possesses broad powers over the licensing of

---

[7] Effective March 1, 2003, Customs was renamed the Bureau of Customs and Border Protection and is now part of the Department of Homeland Security.  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 1502, 116 Stat. 2135, 2308 (2002); Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. No. 108-32, at 4 (2003).  The relevant administrative appeal process for challenging examination scores is as follows:

> If an examinee fails to attain a passing grade on the examination . . ., the examinee may challenge that result by filing a written appeal with [Customs] . . . .  Customs will provide to the examinee written notice of the decision on the appeal.  If the Customs decision on the appeal affirms the result of the examination, the examinee may request review of the decision on the appeal by writing to the Secretary of the Treasury . . . .

19 C.F.R. § 111.13(f) (2004).  On May 15, 2003, the Treasury Department issued an order delegating from the Secretary of the Treasury to the Secretary of Homeland Security "general authority over Customs revenue functions vested in the Secretary of the Treasury as set forth in the Homeland Security Act of 2002."  *Delegation of Authority to the Secretary of Homeland Security*, 68 Fed. Reg. 28,322-01, 28,322 (May 23, 2003).  It should be noted that although the language of the order does not specify that Customs decisions are appealed by writing to the Secretary of Homeland Security, the government's brief postulates that the Secretary of the Treasury delegated authority to decide customs cases to the Department of Homeland Security per its order published in 68 Fed. Reg. 28,322.  Def.'s Br. 1 (stating that "[o]n November 12, 2003, authority to decide administrative appeals of customs broker licensing examination results was delegated to the Department of Homeland Security's Assistant Secretary for Policy and Planning.").  Plaintiff does not challenge this transfer of authorities.  See also 19 U.S.C. § 1641 (Supp. 2003), stating:

> Transfer of Functions
> For transfer of functions, personnel, assets, and liabilities of the United States Customs Service of the Department of the Treasury, including the functions of the Secretary of the Treasury relating thereto, to the Secretary of Homeland Security, and for treatment of related references, see sections 203(1), 551(d), 552(d) and 557 of Title 6, Domestic Security, and the Department of Homeland Security Reorganization Plan of November 25, 2002, as modified, set out as a note under 6

customs brokers. *See Dunn-Heiser v. United States*, 29 CIT __, __, 374 F. Supp. 2d 1276, 1279 (2005). "The findings of the Secretary [of the Treasury] as to the facts, if supported by substantial evidence, shall be conclusive." 19 U.S.C. § 1641(e)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

Because the relevant statutes are silent regarding the proper standard of review in considering the legal questions in customs broker's license denial cases, the court is guided by the Administrative Procedure Act ("APA"). *O'Quinn v. United States*, 24 CIT 324, 325, 100 F. Supp. 2d 1136, 1137 (2000). Under the standard laid out in the APA, the court will uphold the final administrative decision of the Assistant Secretary, unless the decision was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)). "[T]he arbitrary and capricious test requires that the agency engage in reasoned decision-making in grading the exam." *Id.* (citing 2 Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 11.4, at 203 (3d ed. 1994)).

Regarding the review of exam questions, the Federal Circuit explained:

Underpinning a decision to deny a license arising from an applicant's failure to pass the licensing examination are factual determinations grounded in examination administration issues-such as . . . the allowance of credit for answers other than the official answer-which are subject to limited judicial review . . . .

*Kenny v. Snow*, 401 F.3d 1359, 1361 (Fed. Cir. 2005). Although this Court reviews each

---

U.S.C.A. § 542.

19 U.S.C. § 1641. Given that the Secretary of the Treasury has the statutorily mandated power to delegate its functions related to Customs' work, and Congress' anticipation that functions would be transferred, the court will substitute the Secretary of the Treasury with the Secretary for Homeland Security where appropriate in relevant statutes.

exam question, "[p]arties should not conclude from the court's detailed examination of the test answers that the court is some kind of final reviewer of the [exam]." *Di Iorio v. United States*, 14 CIT 746, 752 (1990) (not reported in F. Supp.). In this case, the Assistant Secretary's decision rested on an analysis of Plaintiff's exam results. The court, therefore, "will not substitute its own judgment on the merits of the Customs examination, but will examine decisions made in connection therewith on a reasonableness standard." *Id.* at 747.

**DISCUSSION**

"Among the lawful grounds for denying a license is the failure to pass the licensing examination." *Kenny v. Snow*, 401 F.3d at 1361; *see* 19 U.S.C. § 1641(b)(2) ("the Secretary may conduct an examination to determine the applicant's knowledge of customs and related laws"); 19 C.F.R. § 111.11(a) ("to obtain a broker's license, an individual must . . . [have] attain[ed] a passing (75 percent or higher) grade on a written examination"); 19 C.F.R. § 111.16(b)(2) ("grounds sufficient to justify denial of an application for a license include . . . the failure to meet any requirement set forth in [19 C.F.R.] § 111.11").[8] In reviewing the Assistant Secretary's decision to deny the license, the court "necessarily conduct[s] some inquiry into plaintiff's arguments and defendant's responses concerning each" of the questions. *Di Iorio*, 14 CIT at 747.

---

[8] The relevant regulations also provide:
> If an examinee fails to attain a passing grade on the examination . . ., the examinee may challenge that result by filing a written appeal with [Customs]. . . . Customs will provide to the examinee written notice of the decision on the appeal. If the Customs [sic] decision on the appeal affirms the result of the examination, the examinee may request review of the decision on the appeal by writing to the Secretary of the Treasury . . . .

19 C.F.R. § 111.13(f).

In addition to challenging the Assistant Secretary's decision to deny him credit for the nine

questions, Harak also takes issue with the Assistant Secretary's explanation for the denial of his

appeal.  First, the court will address Plaintiff's specific challenges regarding the nine test

questions, and then turn to Plaintiff's argument regarding the adequacy of the explanation.

### 1. The Contested Questions

### Question 8

Defendant states that Question 8 requires an examinee to classify merchandise under the

Harmonized Tariff Schedule of the United States (2004) ("HTSUS"), 19 U.S.C. § 1202.  Def.'s

Br. 10.  The question asks:

> 8.   What is the correct **CLASSIFICATION** for assembled multifunctional
>      all-in-one office equipment consisting of a copier, facsimile, scanner, and
>      laser printer--including a media transport, control and print
>      mechanism--that is capable of no more than 20 black and white pages per
>      minute?
> A.   8471.60.51
> B.   8471.60.52
> C.   8471.60.62
> D.   8471.60.61
> E.   9008.40.00

To answer the question correctly, an examinee must recognize the difference between a

subheading that states a specific attribute of a printer unit and the residual subheading "Other."

The official correct answer is choice B, which reflects subheading 8471.60.52: an "[a]ssembled

printer unit incorporating at least the media transport, control and print mechanisms: Laser: . . .

Other."  Def.'s Br. 11.  In accord with the official correct answer, the equipment in the question

is properly classifiable under subheading 8471.60.52 since it falls outside the parameters set forth

in 8471.60.51, i.e. it is not capable of producing more than 20 pages per minute.  8471.60.51,

HTSUS.

Plaintiff does not explicitly dispute that choice B is correct, but claims that his answer, choice C, was also a proper response to the question. Pl.'s Br. 8. In support of his argument, Plaintiff states that choice C otherwise "satisfies the requirements set forth in the question," except that there is a "stark absence of reference to the printer being unassembled in [8471.60.62]." Pl.'s Br. 8. Subheading 8471.60.62 is a residual subheading that encompasses laser printer units other than "[a]ssembled units incorporating at least the media transport, control and print mechanisms" and other than those capable of producing more than 20 pages per minute. 8471.60.62, HTSUS. Simply, it is the proper classification for unassembled laser printer units lacking one or more of the named mechanisms and capable of producing no more than 20 color or black and white pages per minute.

In *Brother Int'l Corp. v. United States*, this Court agreed with a tariff classification ruling related to a "'multi-function machine in one common housing that can perform, [sic] printing, copying, scanning, fax and PC fax functions'" capable of printing six pages per minute.[9] 29 CIT __, __, 368 F. Supp. 2d 1345, 1348 (2005) (quoting NY B87982 (Aug. 4, 1997), *available at* 1997 WL 564809). In that ruling, Customs found that the principal function of that machine was its printing function and that "[i]n its imported condition . . . [the MFC[10] was] not an 'assembled'

---

[9] That case involved an undisputed misclassification by a customs broker. The legal question was "whether a mistake of fact or mistake of law caused the misclassification of the MFCs," and as such the holding itself does not apply in this action. *Brother Int'l Corp.*, 368 F. Supp. 2d at 1347; *see id* at 1352 (holding that "the broker's application of GRI principles to determine proper tariff classification of merchandise [was] tantamount to the construction of a law" and so "the broker's result amounted to an error in the construction of a law").

[10] MFC is a proprietary acronym describing a "Multi-Function Center" manufactured by

printer since it [did] not contain the print mechanism." NY B87982 at *1. Based on these findings, Customs determined that the printer was properly classifiable under subheading 8471.60.62. *Id.* Thus, the equipment described in the question is not properly classifiable under subheading 8471.60.62, and choice C therefore is an incorrect answer.

Plaintiff's complaint appears to be with the HTSUS itself rather than with question 8 and its corresponding answer choices. As the question was designed to test an understanding of the structure of the HTSUS and its usage of "Other" subheadings, the court is not convinced by Plaintiff's objections. Accordingly, the court finds that Defendant reasonably denied Plaintiff's appeal with respect to this question.

## Question 14

Question 14 also requires an examinee to classify goods under the applicable HTSUS heading and subheading. The question states:

14.      What is the correct **CLASSIFICATION** for chilled cocktail onions not over 16mm in diameter and preserved in vinegar?

    A.    0703.10.3000
    B.    0703.10.4000
    C.    0711.90.5000
    D.    0712.20.4000
    E.    2001.90.3400

To select the proper classification subheading, the examinee must sort through several identifiers, avoid red herrings, and recognize the pivotal fact that the onions are preserved in vinegar. The official correct answer is choice E, subheading 2001.90.34, which refers to "Vegetables, fruits,

---

Brother International. Brother International, http://www.brother-usa.com/mfc/ (last visited June 28, 2006).

nuts, and other edible parts of plants, prepared or preserved by vinegar or acetic acid: . . . Other: . . . Onions."[11] Def.'s Br. 12 (citing 2001.90.34, HTSUS.). Plaintiff argues that since subheading 2001.90.34 does not reference a limitation in diameter, choice E is invalid. Pl.'s Br. 9. The diameter limitation is a red herring; since subheading 2001.90.34 does not reference a size limitation, it is the correct classification for onions preserved by vinegar or acetic acid of whatever size. 2001.90.3400, HTSUS.

Plaintiff argues that subheading 0703.10.4000 under Chapter 7 of the HTSUS ("Edible Vegetables and Certain Roots and Tubers") is the proper classification, which is reflected by his answer, choice B. Pl.'s Br. 9. As Defendant notes, the Achilles' heel in answer choice B is that contrary to the characterization of the goods in the question, 0703.10.4000 is the subheading for onions and shallots *over* 16mm in diameter. Def.'s Br. 12. Furthermore, like the other answer choices derived from Chapter 7, "it does not account for [the onions] being 'preserved in vinegar.'"[12] Def.'s Br. 12. Therefore, Defendant reasonably denied Plaintiff's appeal of this question.

## Question 15

Question 15 requires the examinee to apply Customs' procedures for merchandise entered under bond under chapter 98, subchapter XIII, HTSUS, to a factual scenario. The question

---

[11] In 2004, Customs ruled upon request that the proper classification of onions preserved in vinegar (Borretane Onions in Balsamic vinegar) was 2001.90.3400. NY K83413 (May 7, 2004), *available at* 2004 WL 1182548.

[12] As supplemental support for its response to Plaintiff, Defendant cites the Explanatory Notes to Chapter 7 of the HTSUS, which provide that vegetables that "have been prepared or preserved otherwise than as provided for in the headings of this Chapter," as the onions in question 14, "are . . . excluded." Def.'s Br. 13.

states:

> 15.     Goods arrive at the port of Philadelphia and are entered temporarily into the U.S. under Chapter 98, Subchapter XIII of the Harmonized Tariff Schedule of the United States.  Nine months later, the goods are in Los Angeles and the importer wants them to remain in the U.S. for four more months.  What action should the importer take?
>
> A.     File a consumption entry
> B.     File a written application for an extension on Customs Form 3173 with the Commissioner of Customs
> C.     File a written application for an extension on Customs Form 3173 with the director of the port of Philadelphia
> D.     File a written application for an extension on Customs Form 3173 with the director of the port of Los Angeles
> E.     Do nothing, because a Temporary Importation Bond already covers the goods.

To answer correctly, the examinee must recognize that the goods are entered temporarily under

bond, and that those goods are allowed to remain in the United States for an aggregate period in

excess of the one year allowed by U.S. Note 1(a), chapter 98, subchapter XIII, HTSUS.[13]  Def.'s

Br. 15.  Pursuant to 19 C.F.R. § 10.37, after the first year of initial entry under bond, the importer

may request an extension of time for exportation of  goods for up to two additional years, or such

shorter period as may be appropriate.[14]  Def.'s Br. 15.  Defendant identifies the correct answer as

---

[13] U.S. Note 1(a), chapter 98, subchapter XIII, HTSUS ("Articles Admitted Temporarily Free of Duty Under Bond") provides in relevant part:

> The articles described in the provisions of this subchapter, when not imported for sale or for sale on approval, may be admitted into the United States without payment of duty, under bond for their exportation within 1 year from the date of importation, which period, in the discretion of the Secretary of the Treasury, may be extended, upon application, for one or more further periods which, when added to the initial 1 year, shall not exceed a total of 3 years . . . .

[14] That section provides:
The period of time during which merchandise entered under bond under chapter 98, subchapter XIII, Harmonized Tariff Schedule of the United States (19 U.S.C.

choice C, because the question clearly identifies Philadelphia as the port of entry.  Def.'s Br. 14.

Plaintiff argues without explanation that his answer, choice D, should be credited.  Pl.'s Br. 17.  Under the scenario in question 15, 19 C.F.R. § 10.37 permits the director of the port at Philadelphia, where the entry was filed, to grant extensions upon receipt of a written application on Customs Form 3173, as reflected by the official correct answer.  Choice D is an incorrect answer since it states that the importer should apply for an extension in Los Angeles, which was not the port where the entry was filed.

Plaintiff argues that the absence of regulatory language in choice C, which sets forth situations in which extensions may not be granted, renders the question unfairly confusing.[15] Pl.'s Br. 16-17.  If an examination question does not contain sufficient information to choose an answer, it may be considered faulty in its drafting and disposed of accordingly.  *See O'Quinn*, 24 CIT at 328.  However, the facts presented in the question do not reflect that any of the events referenced in the absent language have occurred.  Therefore, even though that particular language is absent, the question contains sufficient information for an examinee to select the correct answer choice C.

---

[§] 1202), may remain in the Customs territory of the United States, may be extended for not more than two further periods of 1 year each, or such shorter period as may be appropriate.  Extensions may be granted by the *director of the port where the entry was filed* upon written application on Customs Form 3173, provided the articles have not been exported or destroyed before the receipt of the application, and liquidated damages have not been assessed under the bond before receipt of the application. . . .

19 C.F.R. § 10.37 (2003) (emphasis added).

[15] The excluded text is: "provided the articles have not been exported or destroyed before the receipt of the application, and liquidated damages have not been assessed under the bond before receipt of the application. . . ."  19 C.F.R. § 10.37 (2003).

Plaintiff's argument that 19 C.F.R. § 10.38 suggests additional options for articles admitted temporarily free of duty under bond is unpersuasive.[16] Pl.'s Br. 17. The question, designed to test knowledge of the procedures of filing an extension for exportation, does not require the examinee to contemplate the eventual exportation of the goods at issue. Therefore, the question does not implicate 19 C.F.R. § 10.38.

Defendant was reasonable in its determination that inclusion of the phrase was not necessary to the examinee's ability to correctly answer the question. *See Di Iorio*, 14 CIT at 750. The question was not ambiguous or otherwise unfair, and the Assistant Secretary's decision to deny credit for answer choice D was reasonable. *See Dunn-Heiser*, 374 F. Supp. 2d at 1280.

## Question 19

Question 19 aims to test an examinee's understanding of 19 C.F.R. § 141.89, which details the information required on invoices for fur products and furs imported into the United States.[17] Def.'s Br. 16. The question states:

---

[16] That regulation provides:
(a) Articles entered under chapter 98, subchapter XIII, Harmonized Tariff Schedule of the United States (HTSUS) (19 U.S.C. [§] 1202) may be exported at the port of entry or at another port. An application on Customs Form 3495 shall be filed in duplicate with the port director of a sufficient length of time in advance of exportation . . . .
. . . .
(c) If exportation is to be made at a port other than the one at which the merchandise was entered, the application on Customs Form 3495 shall be filed in triplicate. . . .
19 C.F.R. § 10.38 (2003).

[17] That regulation sets forth:
(a) Invoices for the following classes of merchandise, classifiable under the Harmonized Tariff Schedule of the United States (HTSUS), shall set forth the additional information specified:
. . . .

19.     Which is **NOT** required on invoices for furs and fur products imported into the U.S.?

A.     The names of the animals that produced the fur
B.     The manufacturers' names and addresses
C.     The countries of origin
D.     A statement that the fur product contains or is composed of bleached, dyed, or otherwise artificially colored fur, when such is the fact
E.     A statement that the fur product is not composed wholly or in substantial part of paws, tails, bellies, or waste fur

The question compels the examinee to identify which of the five answer choices contains information not required by the regulation. Defendant certifies the correct answer as choice E. Def.'s Br. 17. In support, Defendant accurately specifies that 19 C.F.R. § 141.89(a)(4) does not require a statement that the fur product *is not* "composed wholly or in substantial part of paws, tails, bellies, or waste fur," but rather requires affirmative disclosure only where the fur product *is* composed of such materials. Def.'s Br. 17. Choices B and C reflect the requirements of 19 C.F.R §§ 141.89(a)(5) and (6), respectively, and are therefore incorrect. Plaintiff's answer, choice D, is taken verbatim from § 141.89(a)(3) and therefore was reasonably deemed incorrect by Customs.

---

Fur products and furs (T.D. 53064) -- (1) Name or names (as set forth in the Fur Products Name Guide (16 CFR [§] 301.0) of the animal or animals that produced the fur, and such qualifying statements *as may be required* pursuant to § 7(c) of the Fur Products Labeling Act (15 U.S.C. [§] 69e(c)); (2) A statement that the fur product contains or is composed of used fur, when such is the fact; (3) A statement that [sic] fur product contains or is composed of bleached, dyed, or otherwise artificially colored fur, when such is the fact; (4) A statement that the fur product is composed wholly or in substantial part of paws, tails, bellies, or waste fur, when such is the fact; (5) Name and address of the manufacturer of the fur product; (6) Name of the country of origin of the furs or those contained in the fur product.

19 C.F.R. § 141.89 (2003) (emphasis added).

Plaintiff argues that the word "may" in 19 C.F.R. § 141.89(a)(1) implies that the

requirements of the regulation are flexible, thus rendering the question unfairly confusing.  Pl.'s

Br. 17-18.  This argument is a flawed understanding of the regulation.  The addition of the

regulatory phrase, "and such qualifying statements as may be required pursuant to § 7(c) of the

Fur Products Labeling Act (15 U.S.C. § 69e(c))" is merely a reference to the possibility that in

addition to the name or names of the animal that produced the fur, information may be required

under the Fur Products Labeling Act in certain circumstances.  19 C.F.R. § 141.89(a).  Such

additional requirements have no bearing whatsoever on the minimal requirement that the name or

names of the animals that produced the fur be included on an invoice of imported goods under 19

C.F.R. § 141.89(a)(1).  The absence of such language does not render choice A any less correct

and does not support the conclusion that the question is unfairly confusing or ambiguously

drafted.  *See Di Iorio*, 14 CIT at 750; *O'Quinn*, 24 CIT at 328, 100 F. Supp. 2d. at 1140.  For

these reasons, the Assistant Secretary engaged in reasoned decision-making in its denial of credit

for Plaintiff's answer to this question.

## Question 36

According to Defendant, Question 36 was designed to examine knowledge of the

hierarchy of the methods for appraisement of imported merchandise as set forth in 19 C.F.R.

§ 152.101(b).[18]  Def.'s Br. 18.  The question states:

---

[18] The regulation provides in part:
(b) Methods. Imported merchandise will be appraised on the basis, and in the
order, of the following:
(1) The transaction value provided for in § 152.103;
(2) The transaction value of identical merchandise provided for in § 152.104, if
the transaction value cannot be determined, or can be determined but cannot be
used because of the limitations provided for in § 152.103(j);

36.    Which statement about the order of appraisement of imported merchandise as  stipulated in the Trade Agreements Act of 1979 is correct?

A.    If the value cannot be determined, minimum value can be used as a basis of appraisement
B.    The importer can choose to use computed value in lieu of deductive value
C.    The importer can choose to use deductive value before transaction value
D.    Transaction value of similar merchandise is the last basis of appraisement
E.    If computed value cannot be determined, the transaction value may not be reasonably adjusted to arrive at a value.

The official correct answer is choice B, for which Defendant cites 19 C.F.R. §§ 152.101(b)(5)

and 152.101(c) as support.[19]  Def.'s Br. 18.

Plaintiff's response, choice E, was deemed incorrect.  Def.'s Br. 19.  A reading of the

regulation reveals the reasoning behind the Assistant Secretary's denial of Plaintiff's appeal with

respect to this question.  Where the computed value cannot be determined, Defendant correctly

points to the reference in 19 C.F.R. § 152.101(b)(6) to § 152.107(1) as providing an alternative

method "derived from the methods set forth in §§ 152.103 through 152.106, reasonably adjusted

to the extent necessary to arrive at a value."  19 C.F.R. § 152.107(a). Therefore, Plaintiff's

---

(3) The transaction value of similar merchandise provided for in § 152.104, if the transaction value of identical merchandise cannot be determined;
(4) The deductive value provided for in § 152.105, if the transaction value of similar merchandise cannot be determined;
(5) The computed value provided for in § 152.106, if the deductive value cannot be determined; or
(6) The value provided for in § 152.107, if the computed value cannot be determined.
19 C.F.R. § 152.101(b) (2003).

[19] 19 C.F.R. § 152.101(c) provides in part:
(c) Importer's option. The importer may request the application of the computed value method before the deductive value method. The request must be made at the time the entry summary for the merchandise is filed with the port director (see § 141.0a(b) of this chapter). . . .

answer was found to be incorrect and credit was denied.

On appeal, Plaintiff insists that choice E is a proper response, based on several arguments. First, "the question fails to identify pertinent information relating to the referenced act" – meaning that instead of referring to the Tariff Act of 1930, 19 U.S.C. § 1401, the question refers to the Trade Agreements Act of 1979, which amended the Tariff Act of 1930. Pl.'s Br. 12. Second, Plaintiff states that 19 C.F.R. § 152.101(b) lists in order various parts of 19 C.F.R. § 152 and that none of these parts are listed as options. Pl.'s Br. 12. Third, Harak correctly states that option B refers the examinee to 19 C.F.R. § 152.101(c), which allows that an importer "may request" the application of the computed value method "before" the deductive value method. Harak argues that choice B misreads § 152.101(c) because it uses the word "in lieu" as opposed to "before," changing the meaning of the regulation. Furthermore, he argues that choice B is incorrect because it provides that the importer "can choose to use computed value before transaction value," whereas § 152.101(c) merely allows the importer to request the reversal of the procedure set out in § 152.101(b). Pl.'s Br. 11-12. Finally, he argues that 19 C.F.R. § 152.101(c) sets forth time requirements for making such a request, which do not appear in option B.

The government retorts that these arguments are unavailing for reasons that the court finds persuasive. First, the question's use of "Trade Agreements Act of 1979" is not misleading because section 201 of that act actually amended the relevant statute, 19 U.S.C. § 1401a.[20] As

---

[20] The section of the regulation that is pertinent to identifying the relevant law sets forth:
(a) Effective date. The value for appraisement of merchandise exported to the United States on or after July 1, 1980, or, for articles classified under subheading 6401.10.00 Harmonized Tariff Schedule of the United States (19 U.S.C. [§] 1202), on or after July 1, 1981, will be determined in accordance with section 402,

the government explained, "the use of either [act] provides the applicant with a level of specificity sufficient to answer the question and apply the relevant regulations." Def.'s Br. 19. Regarding Plaintiff's second argument, the question does not need to explicitly mention the regulations when it tests knowledge of their content. Obviously, what is tested is the future broker's knowledge of law, not his mere ability to read regulations.[21] Plaintiff's third argument is also without merit: 19 C.F.R. § 152.101(c) allows an importer to choose to use computed value before deductive value as long as the importer makes the request at the time the entry summary is filed. The language in § 152.101(c) does not contradict the statement in choice B because the importer's ability to choose ("can choose") is implied by the subsection. Finally, the substitution of the words "in lieu of" for "before" does not make the question unfairly confusing. *See Di Iorio*, 14 CIT at 748-49.

The court has also considered Plaintiff's remaining arguments and has found them to be without merit. Therefore, Defendant has shown that it engaged in reasoned decision-making in its denial of Plaintiff's appeal of this question.

## Question 38

Question 38 aims to assess a test-taker's understanding of the administration of quotas. Def.'s Br. 20. It states:

38.     Which is true regarding quota?

---

Tariff Act of 1930 (19 U.S.C. [§]1401a), as amended by section 201, Trade Agreements Act of 1979.
19 C.F.R. § 152.101(a) (2003).

[21] The exam is open book. A.R. Ex. A at [4] (stating that examinee is responsible for having Harmonized Tariff Schedule of the United States (2004) and Title 19, Code of Federal Regulations).

A.      An entry for consumption for merchandise that has arrived within the Customs territory of the United States may not be submitted for preliminary review without deposit of estimated duties within a time frame approved by the port director

B.      When it is anticipated that a quota will be filled at the opening of the quota period, entry summaries for consumption, with estimated duties attached, shall be presented before 12 noon Eastern Standard Time

C.      Special arrangements shall not be made so that all entry summaries for consumption for quota merchandise may be presented at the exact moment of the opening of the quota in all time zones

D.      In the event a quota is prorated, entry summaries for consumption shall be returned to the importer for adjustment

E.      Merchandise imported in excess of a filled quota can only be exported

The question requires an examinee to identify an accurately stated requirement of the regulation from a list of five potential answer choices. Defendant points to choice D as the correct answer, citing the regulation outlining the procedure on the opening of potentially filled quotas, as codified in 19 C.F.R. § 132.12(c)(2).[22] Def.'s Br. 20. Plaintiff's answer, choice B, was deemed incorrect due to the presence of the solitary, yet crucial word "not," which made choice B an affirmative mandate and the converse of the prohibition in 19 C.F.R. § 132.12(a).[23] Defendant

---

[22] The relevant part of that regulation stipulates, "In the event a quota is prorated, entry summaries for consumption, or withdrawals for consumption, with estimated duties attached, shall be returned to the importer for adjustment. . . ." 19 C.F.R. § 132.12(c)(2) (2003).

[23] That section provides:
(a) Preliminary review before opening. When it is anticipated that a quota will be filled at the opening of the quota period, entry summaries for consumption, or withdrawals for consumption, with estimated duties attached, *shall not be* presented before 12 noon Eastern Standard Time in all time zones. However, an entry summary for consumption, or withdrawal for consumption, for merchandise which has arrived within the Customs territory of the United States may be submitted for preliminary review without deposit of estimated duties within a time period before the opening approved by the port director. Submission of these documents before opening will not accord the merchandise quota priority or status.
19 C.F.R. § 132.12(a) (2003) (emphasis added).

was therefore reasonable in denying credit for that answer.

Plaintiff next argues that due to the question's omission of "pertinent language," the official correct answer, choice D, is "ambiguous at best and incorrect at worse [sic]." Pl.'s Br. 13. As with other such objections in this action, Defendant responds that the omission of "with estimated duties attached" is not fatal to the accuracy of the statement in choice D. Def.'s Br. 20. As the court has stated elsewhere in this opinion, if a question is ambiguously drafted or does not contain sufficient information to choose an answer, it may be considered faulty. *See Carrier v. United States*, 20 CIT 227, 232 (1996) (not reported in F. Supp.); *O'Quinn*, 24 CIT at 328, 100 F. Supp. 2d at 1140. However, a question or answer choice need not reflect the precise wording of the regulation in order to be valid. *See Di Iorio*, 14 CIT at 750. The phrase "with estimated duties attached" is generally present where entry summaries or withdrawals are referenced. *See, e.g.*, 19 C.F.R. § 132.1(d)(1) (2003). If choice D had affirmatively stated that no such attachment was necessary, it would have been an incorrect answer. However, it would have been a leap of logic unacceptable in a multiple choice examination to assume in the absence of such a statement that estimated duties were not required. Though the question is not a perfect reflection of the regulation's language, it is not inadequate. *See Di Iorio*, 14 CIT at 748-49.

## Question 73

Defendant states that Question 73 was designed to test an examinee's knowledge of 19 C.F.R. § 152.103(e)(1), which relates to the classification and appraisement of merchandise.[24]

---

[24] In his letter dated May 10, 2005, petitioning judicial review, Mr. Harak pointed out that Defendant incorrectly cited 19 C.F.R. § 152.103(d)(2)(e) as the relevant section in its answer key and 19 C.F.R. § 152.103(e)(2), the interpretive note, in its response to his initial appeal. A.R. Ex. A at [26]; A.R. Ex. B at [37]. These mistakes are acknowledged by Defendant, Def.'s Br. 24, and not challenged by Plaintiff before the court.

Specifically, the regulation details the procedure for apportionment of the value of an assist when

determining the value of imported merchandise. The question states:

> 73.    Which **ONE** of the following is **NOT** a correct statement regarding the apportionment method of the value of an assist to imported merchandise?
>
> A.    The importer may request to use any reasonable method of apportionment in accordance with generally accepted accounting principles
> B.    If the assist will be used only in the production of merchandise exported to the U.S., the total value of the assist may be apportioned over the first shipment
> C.    If the assist will be used only in the production of merchandise exported to the U.S., the total value of the assist may be apportioned over the number of units produced up to the time of the first shipment
> D.    If the assist will be used only in the production of merchandise exported to the U.S., the total value of the assist may be apportioned over the entire anticipated production
> E.    If the assist is used in several countries, the method of apportionment of the value of the assist will depend on documentation submitted by the exporter.

The question requires the examinee to determine which of the five choices is *not* a correct

statement. A.R. Ex. A at [22]. Defendant maintains that the only acceptable answer is E. Def.'s

Br. 25. Plaintiff asserts without explanation that his answer, D, is acceptable. Pl.'s Br. 13-15.

Without discussing why answer choice E is wrong, Plaintiff argues that the other answers omit

pertinent language, creating ambiguity and rendering the entire question "unfairly confusing."

Pl.'s Br. 13-15.

If a question is ambiguous due to faulty drafting, this Court has held that credit must be

granted or the question must be voided. *Carrier*, 20 CIT at 232 (holding that ambiguous official

answer could not be considered more correct than plaintiff's response). However, it is not

necessary that a correct answer mirror the exact language of the statute it is based upon. *See Di*

*Iorio*, 14 CIT at 750.

Referencing choice A, Plaintiff argues that the disparity between the regulation language, "reasonable manner appropriate to the circumstances," and the examination language, "reasonable method," is ambiguous.[25] Pl.'s Br. 14. Plaintiff insists that the latter phrase is a more permissive standard than the former. Pl.'s Br. 14. The court is not convinced by this argument. Moreover, the last sentence of the interpretive note at 19 C.F.R. § 152.103(e)(2) vitiates any charged ambiguity in choice A.[26] Turning to choice B, Plaintiff contends that the omitted phrase, "if the importer wishes to pay duty on the entire value at once," is a condition precedent or concurrent to any apportionment made over the first shipment.[27] Pl.'s Br. 14-15. The relevant words are more reasonably an explanatory phrase, clarifying the outcome of a

---

[25] The relevant section provides:
The apportionment of the value of assists to imported merchandise will be made in a *reasonable manner appropriate to the circumstances* and in accordance with generally accepted accounting principles. The method of apportionment actually accepted by Customs will depend upon the documentation submitted by the importer. . . . In addition to these three methods, the importer may request some other method of apportionment in accordance with generally accepted accounting principles. . . .
19 C.F.R. § 152.103(e)(1) (emphasis added).

[26] The relevant section provides:
Interpretative note. An importer provides the producer with a mold to be used in the production of the imported merchandise and contracts to buy 10,000 units. By the time of arrival of the first shipment of 1,000 units, the producer has already produced 4,000 units. The importer may request Customs to apportion the value of the mold over 1,000, 4,000, 10,000 units, or any other figure which is in accordance with generally accepted accounting principles.
19 C.F.R. § 152.103(e)(2).

[27] The relevant section provides, "If the entire anticipated production using the assist is for exportation to the United States, the total value may be apportioned over (i) the first shipment, if the importer wishes to pay duty on the entire value at once . . . ." 19 C.F.R. § 152.103(e)(1).

decision by an importer to request apportionment over the first shipment. The absence of this language "in no way renders the excerpted material any less correct." *Di Iorio*, 14 CIT at 750. Choices C and D are taken verbatim from the regulations and as such are correct statements.[28] Choice E substitutes a requirement that the exporter submit documentation where the regulation requires such documentation to be submitted to Customs by the importer.[29] Def.'s Br. 25. Thus, choice E is not a correct statement regarding the apportionment method of the value of an assist.

For the foregoing reasons, the Assistant Secretary's affirmance of Customs' denial of Plaintiff's appeal for credit for his answer to question 73 was not arbitrary, capricious, or otherwise contrary to law.

## Question 74

Question 74 is designed to determine an examinee's knowledge of the procedure set forth in 19 C.F.R. § 171.1, which relates to petitions for the remission or mitigation of a fine, penalty, or forfeiture incurred under any law administered by Customs. Def.'s Br. 25-26. Specifically, the examinee must analyze a list of potential answer choices and determine which choice is an incorrect statement regarding such a petition.[30] The question asks:

---

[28] The relevant section provides, "If the entire anticipated production using the assist is for exportation to the United States, the total value may be apportioned over . . . (ii) the number of units produced up to the time of the first shipment, or (iii) the entire anticipated production . . . ." 19 C.F.R. § 152.103(e)(1).

[29] The relevant section provides, "If the anticipated production is only partially for exportation to the United States, or if the assist is used in several countries, the method of apportionment will depend upon the documentation submitted by the *importer*." 19 C.F.R. § 152.103(e)(1) (2003) (emphasis added).

[30] The relevant regulation stipulates the information requirements of this type of petition: (c) Form. . . . The petition must set forth the following:

74.    Which statement about a petition for relief of a seizure is **INCORRECT**?

A.    The petition must include proof of a petitionable interest in the seized property

B.    The petition must include a description of the property involved in the seizure

C.    The petition must be filed within 60 days from the date of mailing of the notice of seizure

D.    The petition must include the date and place of the seizure

E.    The petition must include the facts and circumstances relied upon by the petitioner to justify remission or mitigation.

In support of its identification of choice C as the correct answer, Defendant juxtaposes the regulatory provision that petitions must be filed within 30 days with the artificial construction reflected in the question allowing 60 days. Def.'s Br. 26. Plaintiff argues without further explanation that his answer, choice D, should also be considered a correct response. Pl.'s Br. 15. However, since the language of choice D is taken verbatim from the statute, it is not an incorrect statement and therefore is an incorrect answer. *See* 19 C.F.R. § 171.1(c)(2); Def.'s Br. 26.

Plaintiff next argues that the question is unfairly confusing. Pl.'s Br. 16. He bases his argument entirely on an incongruity between the regulatory language "relief *from* seizures" and the wording of the question, which references a relief "of" a seizure. 19 C.F.R. § 171.2(b); Pl.'s Br. 15-16. Defendant responds that the important words are "petition for relief" and "seizure"

---

(1) A description of the property involved (if a seizure);
(2) The date and place of the violation or seizure;
(3) The facts and circumstances relied upon by the petitioner to justify remission or mitigation; and
(4) If a seizure case, proof of a petitionable interest in the seized property.
19 C.F.R. § 171.1(c). The regulation also sets forth time restrictions for filing a petition: "(b) When filed -- (1) Seizures. Petitions for relief from seizures must be filed within *30 days* from the date of mailing of the notice of seizure. . . ." 19 C.F.R. § 171.2(b) (emphasis added).

and that "[r]egardless if the wording is 'from' or 'of'' a seizure, the question conveys enough information [for the examinee] to be able to determine and apply the relevant regulations." Def.'s Br. 26.

The court finds Plaintiff's arguments to be unpersuasive. All necessary information for Plaintiff to correctly answer the question was available, and the question was not drafted ambiguously. *See O'Quinn*, 24 CIT at 328, 100 F. Supp. 2d at 1140 (holding that where examination question does not contain sufficient information to choose answer, it may be deemed ambiguous and therefore faulty). Plaintiff's linguistic quibble is not only irrelevant, but is a transparent and labored justification for an incorrect answer.

## Question 44

Question 44 was designed to evaluate an examinee's understanding of 19 C.F.R. § 163.12.[31] Def.'s Br. 22-23. That regulation sets forth the prerequisites for certification of a

---

[31] That regulation stipulates in relevant part:
(3) Certification requirements. . . . In order to be certified, a recordkeeper must meet the applicable requirements set forth in the Customs Recordkeeping Compliance Handbook and must be able to demonstrate that it:
(i) Understands the legal requirements for recordkeeping, including the nature of the records required to be maintained and produced and the time periods relating thereto;
(ii) Has in place procedures to explain the recordkeeping requirements to those employees who are involved in the preparation, maintenance and production of required records;
(iii) Has in place procedures regarding the preparation and maintenance of required records, and the production of such records to Customs;
(iv) Has designated a dependable individual or individuals to be responsible for recordkeeping compliance under the program and whose duties include maintaining familiarity with the recordkeeping requirements of Customs;
(v) Has a record maintenance procedure acceptable to Customs for original records or has an alternative records maintenance procedure adopted in

recordkeeper in the Recordkeeping Compliance Program. The examinee must choose which of

five answer choices is not required by the regulation. The question states:

> 44. To be a certified recordkeeper in the Recordkeeping Compliance Program, the recordkeeper does **NOT** need to have:
>
> A. A designated officer to be responsible for recordkeeping compliance
> B. An understanding of the legal requirements for recordkeeping
> C. Procedures in place regarding the preparation and maintenance of required records and the production of such records to Customs
> D. A record maintenance procedure acceptable to Customs for original records
> E. Procedures in place to explain the recordkeeping requirements to those employees who are involved in the preparation, maintenance and production of required records

Defendant cites the correct answer as A by eliminating the other four potential answers. Def.'s

Br. 23. Plaintiff's answer, choice E, is a direct quote from 19 C.F.R. § 163.12(b)(3)(ii) and, as

such, is an explicit regulatory requirement and an incorrect answer. Therefore, Defendant was

reasonable in its conclusion that choice E was "clearly disposed of by [that] section." Def.'s Br.

23. Plaintiff asserts that his answer is proper without any explanation and argues that the

question is unfairly confusing. Pl.'s Br. 11.

To answer correctly, the examinee must draw a sharp distinction between choice A's

usage of "designated officer" and the regulation's usage of "dependable individual." According

to grammatical canons of construction, "when the legislature uses certain language in one part of

the statute and different language in another, the court assumes different meanings were

intended." *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (quotations & citation

---

accordance with § 163.5(b); . . . .
19 C.F.R. § 163.12(b)(3).

omitted).  In a regulation found in the same Part 163 - Recordkeeping, the term "officer" is used

to signify an officer of a company.  19 C.F.R. § 163.7(c)(ii) (stating that Customs' summons

must be served "by delivery to an officer, managing or general agent, or any other agent

authorized by appointment of law to receive service of process").  In accordance with the canons

of statutory construction, in the regulation at issue here, the term "individual" has a distinct

meaning and is more expansive than the term "officer."  *See* 19 C.F.R. § 163.12(b)(3)(iv).

Plaintiff offers an evaluation of the characteristics of company officers and their inherent

dependability in an attempt to show that this distinction is meaningless.  Pl.'s Br. 10-11.  The

court finds that though, as Plaintiff claims, "an officer could be a dependable individual and vice

versa," the regulation uses specific language requiring only that a "dependable individual" be

designated and does not require that the individual be an "officer."  19 C.F.R. § 163.12(b)(3)(iv);

Pl.'s Br 10-11.  Therefore, choice A is reasonably cited as the correct answer.

Plaintiff's next argument is essentially that there is more than one correct answer to the

question since choices B and D "omitted material [regulatory] language."  Pl.'s Br. 11.

Defendant cites the relevant regulatory sections and responds that the answer choices need not

mirror the regulation to be acceptable and that the omitted language is not "necessary or relevant

to determining the correct answer."[32]  Def.'s Br. 23.  Choice B does omit regulatory language, but

that language merely elaborates on the requirement that a recordkeeper understand the legal

---

[32] The section relevant to Choice B requires that a recordkeeper "[u]nderstands the legal requirements for recordkeeping, including the nature of the records required to be maintained and produced and the time periods relating thereto."  19 C.F.R. § 163.12(b)(3)(I) (2003).  The section relevant to Choice D requires that a recordkeeper "[h]as a record maintenance procedure acceptable to Customs for original records or has an alternative records maintenance procedure adopted in accordance with § 163.5(b)."  19 C.F.R § 163.12(b)(3)(v).

requirements for recordkeeping and does not alter the prerequisite that a recordkeeper have such

an understanding prior to certification. *See Di Iorio*, 14 CIT at 750. Choice D, however, omits

an alternative to the requirement that a recordkeeper have a record maintenance procedure

acceptable to Customs for original records. The availability of this alternative records

maintenance procedure, subject to the provisions of 19 C.F.R. § 163.5(b),[33] allows a recordkeeper

to elect to "maintain any records, other than records required to be maintained as original records

. . . in an alternative format, provided that the person gives advance written notification [to the

relevant authority]." 19 C.F.R. § 163.5(b)(i). For a recordkeeper to have a maintenance

procedure acceptable to Customs for original records is not the only way to meet the

requirements of the regulation; answer choice D suggests that it is. *See Carrier*, 20 CIT at 232

(striking down question that falsely suggested compulsion of marking requirements not present

in regulation). Thus, answer D could also be a correct answer to question 44.[34]

A similar issue arose in *O'Quinn*, which involved a Plaintiff who failed to pass the

customs broker's license examination by a single correct answer. 24 CIT at 325, 100 F. Supp. 2d

---

[33] The relevant part of that regulation provides:

(b) Alternative method of storage -- (1) General. Any of the persons listed in §
163.2 may maintain any records, other than records required to be maintained as
original records under laws and regulations administered by other Federal
government agencies, in an alternative format, provided that the person gives
advance written notification of such alternative storage method to the [relevant
authority] and provided further that the [authority] does not instruct the person in
writing as provided herein that certain described records may not be maintained in
an alternative format. . . .

19 C.F.R. § 163.5(b).

[34] The statutory language of 19 C.F.R. § 163.5 is not clear in its usage of the construction
"other than." The statute could conceivably be understood as allowing records additional and
supplemental to those required to be maintained in original or as allowing alternative formats of
certain documents typically required to be maintained as original records.

at 1137.  The Plaintiff in that case initiated action in this Court, challenging the legal basis of the

Assistant Secretary's decision to deny his application for a customs broker's license.  *Id.* at 325,

100 F. Supp. 2d at 1138.  The Court determined that the first of two contested questions did not

contain sufficient information to choose an answer, and therefore remanded with instructions that

"'[P]laintiff's answer must be considered correct or the question must be voided.'" [35]  *Id.* at 328,

100 F. Supp. 2d at 1140 (quoting *Carrier*, 20 CIT at 232) (brackets in original).  The immediate

relevancy of *O'Quinn* to this action involves the second contested question in that case, which

was remanded to the Assistant Secretary "for reconsideration to determine the appropriate

disposition of a question that, although answered incorrectly by the test-taker in any event,

contains more than one correct answer."[36]  *Id.* at 331-32, 100 F. Supp. 2d at 1143.  The Court

concluded with instructions that if the disposition of the first contested question resulted in a

passing grade for Plaintiff, it was not necessary for the Assistant Secretary to address the second

contested question.  *Id.* at 332, 100 F. Supp. 2d at 1143; *see also Carrier*, 20 CIT at 233.

     Like the second contested question in *O'Quinn*, question 44 technically has two correct

---

[35] With reference to that question, the court held that all cited lexicographic authorities required a named point to follow the "FOB" term supplied in the question.  The absence of such a named point  in the question was the basis of the court's holding that "[g]iven the question's incorrect use of the delivery term 'FOB,' it was unreasonable for the Assistant Secretary to affirm Customs' denial of Plaintiff's appeal of this question."  *O'Quinn*, 24 CIT at 328, 100 F. Supp. 2d at 1140.

[36] That question tested knowledge of record retention requirements and required the examinee to identify which of five answer choices was not required by the relevant regulations.  *O'Quinn*, 24 CIT at 328, 100 F. Supp. 2d at 1140.  The Court determined that at least two of the answer choices were "technically correct" since "pursuant to § 111.23(a)(1) & (e)" certain documents were not necessarily required to be retained by the broker at her place of business, i.e. there was a valid alternative not contemplated by the question.  *Id.* at 331, 100 F. Supp 2d at 1142.

answers. *See O'Quinn*, 24 CIT at 332, 100 F. Supp. 2d at 1143. Unlike *O'Quinn*, to find that the denial of Plaintiff's application to be licensed as a customs broker was arbitrary, capricious, or otherwise not in accordance with law, the court must find that the Assistant Secretary's decision to deny a minimum of four of Plaintiff's contested questions was unreasonable. *See id.* at 325, 100F. Supp. 2d at 1137-38. That minimum threshold is not met by Plaintiff in this action.

The court also reviews the Assistant Secretary's decision to deny Plaintiff's application for a customs broker's license itself. 28 U.S.C. § 1581(g)(1); *see Di Iorio*, 14 CIT at 747. Though the court must necessarily conduct some inquiry into the respective arguments and responses, "the allowance of credit for answers other than the official answer . . . [is] subject to limited judicial review." *Kenny*, 401 F.3d at 1361; *see Di Iorio*, 14 CIT at 747. Because allowance or denial of credit for a contested question is not dispositive to the court's review of the denial of a customs broker's license, it is not necessary in this case to remand a question for further determination.

## 2. The Adequacy of the Assistant Secretary's Explanation

Plaintiff claims that the Secretary's letter of January 31, 2005, informing Plaintiff of the Secretary's review and subsequent decision to uphold Customs' denial of his appeal was a "blanket 'rubber-stamp' affirmation" of the denial of his appeal, without providing adequate explanation. Pl.'s Br. 7.; A.R. Ex. G. at [58]. Plaintiff relies solely on this Court's decision in *Bell v. United States*, 17 CIT 1220, 839 F. Supp. 874 (1993). In that case, the plaintiff passed the customs license broker's examination. *Id.* at 1221, 839 F. Supp. at 875. Customs thereafter denied his application for a license based upon "derogatory information" disclosed in a background investigation, but failed to set forth "pertinent facts" that were the basis of its

determination. *Id.* at 1221-22, 839 F. Supp. at 876. Upon appeal, Customs cited 19 C.F.R.

§ 111.16(b)(3), (4), and (6)[37] as the basis of its ultimate denial, but still did not discuss supporting

facts. *Id.* at 1222, 839 F. Supp. at 876-77. In subsequent levels of administrative review, neither

Customs nor the Secretary of the Treasury discussed the factual basis or reasoning underlying the

determination to deny Plaintiff's license. *Id.* at 1226-27, 839 F. Supp. at 880. The Court

remanded the case with instructions to Customs to articulate a thorough explanation of its

reasons for granting or denying Bell's license application. *Id.* at 1228, 839 F. Supp. at 881.

The court agrees with Defendant that reliance on *Bell* is simply inapposite. Def.'s Br. 8.

In the present case, the basis for Customs' denial was not 19 C.F.R. § 111.16(b)(3), (4), or (6) as

in *Bell*, but rather 19 C.F.R. § 111.16(b)(2) and 19 C.F.R. § 111.11(a)(4)[38]. Plaintiff was denied

---

[37] The regulation states:

(b) Grounds for denial. The grounds sufficient to justify denial of an application
for a license include, but need not be limited to:
(1) Any cause which would justify suspension or revocation of the license of a
broker under the provisions of § 111.53;
(2) The failure to meet any requirement set forth in § 111.11;
(3) A failure to establish the business integrity and good character of the applicant;
(4) Any willful misstatement of pertinent facts in the application for the license;
(5) Any conduct which would be deemed unfair in commercial transactions by
accepted standards; or
(6) A reputation imputing to the applicant criminal, dishonest, or unethical
conduct, or a record of that conduct.
19 C.F.R. § 111.16(b).

[38] The section of that regulation dispositive to this case stipulates that in order to obtain a
broker's license, an individual must
[h]ave established, by attaining a passing (75 percent or higher) grade on a written
examination taken within the 3-year period before submission of the application
referred to in § 111.12(a), that he has sufficient knowledge of customs and related
laws, regulations and procedures, bookkeeping, accounting, and all other
appropriate matters to render valuable service to importers and exporters.
19 C.F.R. § 111.11(a)(4).

a customs broker's license due to his failure to achieve a passing score on the requisite examination, not due to a factual finding alleging unethical behavior as in *Bell*.

Furthermore, Plaintiff's extension of *Bell* in his argument that he was not given sufficient explanation for why his answers were incorrect is also without merit. Customs enclosed an answer key with its initial letter of May 14, 2004, and dedicated nine pages to accurately, even if not perfectly, respond to each individual contested question on appeal. A.R. Ex. A at [25-26]; A.R. Ex. B at [30-38]. It was not necessary for the Secretary's letter of January 31, 2005, to reiterate the reasoning articulated by Customs since it merely affirmed the determinations by Customs without modification. A.R. Ex. G at [58]. The court finds that Customs provided an adequate explanation of the reasoning underlying its decision to deny Plaintiff's application for a customs broker's license.

## CONCLUSION

The Assistant Secretary's decision not to grant Harak the customs broker's license was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A). For all the foregoing reasons, the court denies Plaintiff's motion for judgment on the administrative record, grants defendant's cross-motion and dismisses this case.

Judgment will be entered accordingly.

July 18, 2006                                                          /s/ Judith M. Barzilay
Dated:_____            _____
New York, NY                                                    Judith M. Barzilay, Judge